**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

                       Plaintiff,

    vs.                 CASE NO. 8:15-cr-457-T-23TGW
                            May 16, 2017
                            Tampa, Florida
                            8:39 a.m. - 8:59 a.m.

JAMAL SMITH,

                     Defendant.
_____/


**TRANSCRIPT OF SENTENCING**
**BEFORE THE HONORABLE STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**


**APPEARANCES:**

For the Government:      MICHAEL SINACORE, ESQ.
                          Assistant U.S. Attorney
                          400 N. Tampa Street, Suite 3200
                          Tampa, Florida 33602
                          813/274-6000

For the Defendant:       MARK J. O'BRIEN, ESQ.
                          O'Brien Hatfield, P.A.
                          511 W. Bay Street, Ste. 330
                          Tampa, FL  33606

Court Reporter:          Howard W. Jones, RPR, FCRR
                          801 N. Florida Avenue, Suite 15A
                          Tampa, Florida 33602
                          813/301-5024


Proceedings reported via Official Court Reporter and transcribed using computer-aided transcription.

**(Court called to order)**

                  **P R O C E E D I N G S**

THE COURT: Good morning. Perhaps counsel and the Defendant will step forward to the clerk's table and everyone else may be seated.

Well, good morning. We are together in case 15-criminal-457, United States of America vs. Jamal Smith.

Who speaks for the United States?

MR. SINACORE: Michael Sinacore on behalf of the United States. Good morning.

THE COURT: Good morning, Mr. Sinacore.

And who speaks for the Defense?

MR. O'BRIEN: May it please the Court, my name is Mark O'Brien.

THE COURT: Good morning, Mr. O'Brien.

And you are Jamal Smith?

THE DEFENDANT: Yes, sir.

THE COURT: Good morning.

THE DEFENDANT: Morning, sir.

THE COURT: Well, Mr. Smith, on February 27th of this year you pleaded guilty to Count One of an indictment. Count One charges you with being a felon in possession of a firearm in violation of parts of Section 922 and 924 of Title 18 of the United States Code.

I earlier entered an order that accepts your plea

of guilty and that adjudges you guilty of that possession offense alleged in Count One.

So, as of this moment, your guilt is determined and it remains only to determine your sentence. As I know Mr. O'Brien has explained to you, I will determine your sentence by first calculating an advisory sentence under the United States sentencing guidelines and by next inviting both the United States and the Defense to direct my attention to any matter, including those that appear at 18 U.S.C. 3553(a) that I should consider in arriving at a final and reasonable sentence in accord with applicable law.

I will begin by asking Mr. Sinacore if he's had an opportunity on behalf of the United States to review and evaluate the presentence report and, if so, whether the United States objects either to the factual content of the presentence report or to the application of the sentencing guidelines that is recommended by the United States Probation Office.

MR. SINACORE: Your Honor, I have had an opportunity to review the report and the United States does not have any objection either to the factual findings or the legal conclusions.

THE COURT: Mr. O'Brien, have you and Mr. Smith had an opportunity together to review and evaluate the presentence report?

MR. O'BRIEN: Yes, Your Honor.

THE COURT: Mr. Smith, have you seen the presentence report and discussed it with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. O'Brien, first, is there any objection to the factual content of the presentence report?

MR. O'BRIEN: No, Your Honor.

THE COURT: Then that is adopted.

Is there any objection for the purpose of the advisory guideline calculation to the Offense Level of 31 and Criminal History Category of VI?

MR. O'BRIEN: No, Your Honor.

THE COURT: That is adopted as well.

Mr. Sinacore, is there a motion on behalf of this defendant under 5K1 or otherwise?

MR. SINACORE: Yes, Your Honor. We would move to dismiss Counts II and III at the conclusion of the sentencing and Agent Mike Coad is here to inform the Court of substantial assistance, but we are not making a motion under 5K.

THE COURT: All right. You want to hear from the agent now?

MR. SINACORE: Yes, sir.

THE COURT: All right. Good morning. And your name is?

THE WITNESS: Michael Coad. Last name is C-O-A-D.

THE COURT: Yes, sir.

THE WITNESS: Presently, I'm a supervisor with ATF, but at the time I was case agent on this investigation. We were able to conduct a debriefing with Mr. Smith. This was done prior to his plea and he did provide information that I believed and law enforcement believed to be truthful and credible, however at this time we have not perfected any criminal cases that have led from this debriefing. At such time in the future that we do, obviously we may revisit the assistance of Mr. Smith in those investigations.

THE COURT: All right. Thank you, sir.

MR. SINACORE: Your Honor, as a result of his cooperation that was taken into consideration in the agreement to drop Counts Two and Three including enhancements that would have applied with Count Three.

THE COURT: All right. Thank you, sir.

Mr. O'Brien, I did -- I want to recognize you to advance any matter in mitigation or any matter under 3553 after which I'll recognize Mr. Smith and recognize the United States again briefly.

I did read your sentencing memorandum along with the presentence report and the several letters from family members. As I recall, they were all from family members on behalf of Mr. Smith, but I'll recognize you to advance any

other matters.

MR. O'BRIEN: Judge, to begin I would like to point out that your right side of the courtroom, various members of Mr. Smith's family are present. I think that's important, Judge, because as the Court noted in its reading of the letters that they submitted they are not public speakers, but they do support, love and care for Mr. Smith. They understand the gravity of his offense and why he's here. They understand this is going to be a significant prison sentence. They also understand there is an opportunity to come back hopefully for a good reason in the future based on what Agent Coad has advised the Court.

Mr. Smith, Your Honor, earned his sentence today. But I do think that there is mitigation that would allow the Court to vary eight months to 180 months. We do not offer this to exculpate the Defendant, simply offer it as mitigation. As the Court noted from its reading of the PSI, Mr. Smith had a difficult upbringing with an absentee father who eventually just abandoned the family.

His mother was a crack addict who was jailed on multiple occasions. He was sent to live with an aunt and eventually ended up in a foster home.

Mr. Smith's criminal conduct started as a teenager -- actually earlier than that, his drug use started at age 12. It appears that the old saying some people are

born on third base thinking they hit a triple. Mr. Smith was not one of those individuals.

Mr. Smith's criminal conduct continued when he was an adult. I think the lack of parental guidance, some sort of positive authority figure as a child in his formative years all too predictably led to where we are right now.

That being said, Mr. Smith accepted responsibility, acknowledged what he did and attempted to right a wrong both in a moral sense and also in a sense to help himself when he provided the information to law enforcement as Agent Coad has already testified to.

Your Honor has the authority under the history and characteristics based on the reasons that I just proffered to vary down eight months and we are asking the Court to do that.

THE COURT: Thank you, Mr. O'Brien.

Mr. Smith, you do have an opportunity to speak on your own behalf this morning. You are not, of course, required to say anything, but if you would like to say something I would be happy to hear from you.

THE DEFENDANT: I'm okay, Your Honor. He pretty much said it all for me, sir.

THE COURT: All right. Is that your mom and brothers and sisters in the back?

THE DEFENDANT: Yes, sir. And my aunt and

girlfriend, too, sir.

THE COURT:  I remember that you were 31?

THE DEFENDANT:  Yes, sir.

THE COURT:  What says the United States with respect to reasonable sentence?

MR. SINACORE:  Your Honor, Mr. O'Brien's position is not unreasonable to vary eight months if the Court were inclined for a bottom of the guideline range sentence.  We can't support it, however, Your Honor, simply because of a couple factors.  Number one, this defendant has a terrible habit of running from law enforcement, flees constantly.  And I'm sure Court has seen that in the presentence report --

THE COURT:  I did.

MR. SINACORE:  -- that's a concern.  And then the danger that that presents was manifest in this particular case.  This was very high risk situation for the officer involved and for that matter for the Defendant.  He led the officer on a chase that resulted in his returning to his car and apparently trying to grab a firearm.

THE COURT:  Well, the minute he turned back to the car, everybody involved knew exactly why he was going back, so it becomes -- well, you talk about high risk.

MR. SINACORE:  Yes, sir.

THE COURT:  The chances that somebody is going to

die there -- in fact, I would say the chances that the defendant would not survive that vastly exceed the chances of the officer won't.

MR. SINACORE: Yes, sir, I would agree with that. And the officer used the minimal -- absolute minimal amount of force. I think an argument could have been made that he could have used deadly force. He tazed him. The situation ended without any tragedy, but Mr. Smith is who caused this and he has shown that pattern repeatedly.

So, for that reason, we think a guideline sentence is appropriate, whatever Your Honor feels is appropriate within the guidelines.

THE COURT: All right. Thank you, sir. Anything further from the United States?

MR. SINACORE: No, Your Honor.

THE COURT: Any reason not to proceed to sentence?

MR. SINACORE: No, sir.

THE COURT: Mr. O'Brien, anything further from the defense?

MR. O'BRIEN: No, sir.

THE COURT: Any reason not to proceed to sentence?

MR. O'BRIEN: No, sir.

THE COURT: Pursuant to the Sentencing Reform Act of 1984 to the extent applicable after United States vs. Booker and pursuant to 18 U.S.C. 3553, Jamal Smith is

committed to the Bureau of Prisons for 210 months.

Upon release, the Defendant will serve a five-year term of supervised release during which he will comply with the standard conditions adopted by the Court in the Middle District of Florida as well as the special condition that he will participate in a substance abuse program, follow the Probation Officer's instructions with respect to the program, contribute to the costs in accord with the applicable sliding scale and submit to random drug testing.

As a qualifying felon, the Defendant will cooperate in the collection of his DNA as directed by the Probation Officer. Of course, the mandatory drug testing requirements of the Violent Crime Control Act are imposed not to exceed 104 per year.

I'll waive the imposition of a fine.

There is a preliminary forfeiture order at Document 35. The United States is entitled to have that incorporated into the order of judgment and commitment and made final and it is.

I levy the special assessment of $100, which is due immediately.

I have considered the policies and guidelines of the United States Sentencing Commission. I have considered the applicable statutory provisions. I have considered the advisory guideline range that is derived from the

guidelines. And I have considered the factors at 18 U.S.C. 3553(a).

I have imposed a sentence in the middle of the applicable guideline range on this Criminal History Category VI offender who has a propensity to create high trauma incidents with law enforcement and has a long and troubled and nagging persistent criminal history.

This latest event features an obvious attempt to recover and use a .45 caliber pistol which is a handheld cannon only useful for inflicting death. So, this incident is intolerable and I suppose in the -- it's a miracle that the defendant is not shot to death.

The only other alternative being the officer is shot to death. Although any time an amateur gets in an exchange of gun fire with a professional, the amateur is more likely to die than the professional, though that lesson seems poorly learned despite the many repetitions.

Anyway, both the characteristics of this offense and his criminal history and the characteristics of the offender -- I think I said that wrong. Both the characteristics of this offense and the characteristics of the offender, including his criminal history, suggest the necessity for a significant sentence, as does respect for the law, the necessity of deterrence and the need to avoid unwarranted disparities and this sentence obviously is well

within the main stream of sentences for similarly situated offenders.

In accord with the plea agreement, Count Two and Count Three are dismissed.

Does counsel for the United States or the defense object to the sentence or the manner of its announcement?

MR. SINACORE: No, Your Honor.

MR. O'BRIEN: No, Your Honor.

THE COURT: The Defendant is remanded to the United States Marshal to await designation by the Bureau of Prisons. I agree with the recommendation of counsel in his sentencing memorandum that the Defendant should be housed probably at Coleman, Florida, or at least as near to his family here in Tampa as possible.

And, secondly, he should be allowed to participate in the 500-hour drug control program, the RDAP Program offered by the Bureau of Prisons so he can make some progress with his substance abuse problem, the problem his mother had, the problem that he has and the problem that none of us want his son to have.

In your plea agreement, Mr. Smith, you have largely waived your right to appeal from this judgment and sentence unless I have sentenced you unlawfully, which typically means above the statutory maximum, above the applicable guideline range or in some unconstitutional

manner. I think I have done none of that so I think you have no right of appeal. That's for you and Mr. O'Brien to discuss.

To the extent that you have some right of appeal and elect to do so, there are two things I need to tell you about that appeal.

Number one, you always have a right to a lawyer on a direct appeal. If you can't afford a lawyer, one would be provided for you at public expense. As it stands now, Mr. O'Brien will be required to at least preserve and to pursue the appeal unless other counsel is substituted for him by an order of the Court.

Number two, you begin an appeal by filing with the Clerk of this Court -- when I say this Court, I mean not the Court of Appeals in Atlanta, but this Court here in Tampa -- file with the Clerk here in Tampa a written notice of appeal. That notice has to be filed within 14 days, in two weeks, and has to be accompanied by a filing fee.

If you have no money and you can't pay the fee, Mr. O'Brien can ask the Court to waive the fee and if that's granted you can appeal without payment.

Anything further from the United States?

MR. SINACORE: No, Your Honor.

THE COURT: Anything further from the defense?

MR. O'BRIEN: No, Your Honor.

THE COURT: Good luck to you, sir. And we are in adjournment.

(Hearing concluded.)

UNITED STATES DISTRICT COURT     )
                                 )
MIDDLE DISTRICT OF FLORIDA       )


                REPORTER TRANSCRIPT CERTIFICATE


        I, Howard W. Jones, Official Court Reporter for the United States District Court, Middle District of Florida, certify, pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter (Pages 1 through 15 inclusive) and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.


                          /s      *Howard W. Jones*


                          _____
                          Howard W. Jones, RDR, RMR, FCRR
                          Official Court Reporter
                          United States District Court
                          Middle District of Florida
                          Tampa Division
                          Date:  01-18-23